# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| LEONARD CONLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CV614-058 |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Alleging disability due to narcolepsy, obstructive sleep apnea, and cataplexy, Leonard Conley seeks judicial review of the Social Security Commissioner's denial of his application for a period of disability and disability benefits. Docs. 1; 10.[1] That denial followed Conley's exhaustion of administrative remedies, doc. 6-2 at 3, so his claims are now ripe for judicial review.

## I. GOVERNING STANDARDS

In social security cases, courts:

---

[1] The Court is citing to its docketing software's pagination; it does not always line up with each paper document's printed pagination.

review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

experience.[1] *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. BACKGROUND

Conley, 43 at the time of the administrative law judge's (ALJ) final decision denying benefits, docs. 6-2 at 27; 6-5 at 4, has a high school education, doc. 6-6 at 7, and past relevant work experience as a cabinetmaker. *Id.* Since at least 1993, plaintiff has had obstructive sleep apnea and narcolepsy. Doc. 6-7 at 25. By 2006, his apnea qualified as severe, *id.* at 30, and by March 2007 he lost his cabinetmaking job because of sleep related accidents. Doc. 6-2 at 49-50 (fingers stapled together after falling asleep on the job).

---

[1] At steps four and five the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 2015 WL 859830 at * 4 (11th Cir. Mar. 2, 2015) (quotes and cite omitted).

Unemployed since then, Conley lives with his wife of 20 years and two youngest children, doc. 10 at 2, and says he spends his days trying to avoid sleep. Doc. 6-6 at 25. He tries to help with household chores and small tasks, at least "until [he] get[s] to[o] sleepy." *Id.* When his kids get off the bus in the afternoons, he tries to help with homework, but "usually fall[s] asleep doing that." *Id.* at 52. Conley uses a CPAP (continuous positive airway pressure) machine to control his apnea and also takes amphetamines to help stay awake. *See* doc. 6-11 at 52.

Conley filed for disability benefits on February 9, 2010, alleging a disability onset of March 1, 2007. Doc. 6-2 at 27. Following administrative denial, he attended and testified at a hearing on September 13, 2012 before the ALJ, who later denied his application. *Id.*

The ALJ determined that Conley has not engaged in substantial gainful activity since March 1, 2007, and has the severe impairments of "narcolepsy, obstructive sleep apnea, and obesity (20 CFR 404.1520(c))." Doc. 6-2 at 29. That brought Conley to step three, where the ALJ found that he does not have an impairment or combination of impairments that meet or medically equal a listed impairment. *Id.* at 30. The ALJ then

conducted an RFC assessment, which, as noted *supra* n. 1, is "based upon all of the relevant evidence[] of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997); *Harris v. Colvin*, 2014 WL 5844240 at * 6 (S.D. Ala. Nov. 12, 2014).

The ALJ found that Conley had an RFC that enabled him to perform medium work, "except that [he] can no more than occasionally push or pull up to 25 pounds." Doc. 6-2 at 30.[2] After finding Conley unable to perform past relevant work, *id.* at 33, the ALJ proceeded to step five and consulted a vocational expert (VE) to determine if he could make an adjustment to other work. *Id.* The VE opined that Conley could perform light and medium work jobs, such as office helper, linen room attendant, and cashier. *Id.* at 34.

Relying on the VE's testimony, which the ALJ found "consistent with the information contained in the Dictionary of Occupational Titles and work experience," doc. 6-2 at 34, the ALJ determined that Conley

---

[2] The ALJ further found that Conley "can stand and walk up to six hours in an eight-hour workday, and can sit up to six hours . . . with normal breaks[,] . . . can no more than occasionally climb stairs or ramps, and can never climb ladders, ropes or scaffolds. [Conley] can no more than frequently stoop, kneel, crouch, or crawl . . . [and] should avoid unprotected heights and other hazards." Doc. 6-2 at 30.

could adjust "to other work that exists in significant numbers in the national economy," and therefore was not disabled. *Id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.").

## III. ANALYSIS

After reciting in detail the allegedly "objective medical evidence of disability," Conley concludes that the ALJ (1) "disregarded the . . . overwhelming objective medical evidence and 'treating' physician's expert opinions," in determining his RFC, doc. 10 at 4; (2) failed to consider the entire record, *id.* at 8; and (3) failed to provide a full and fair hearing by not correctly developing the administrative record. *Id.* at 16. Each issue is discussed in turn, but, as the Commissioner correctly notes, "[e]ach is without merit." Doc. 13 at 3.

## A. Conley's Treating Physicians' Opinions and the ALJ's Consideration of the Entire Record

Conley specifically complains that the ALJ gave "no weight whatsoever to the expert medical opinions and [physical capacity evaluations (PCE)] of treating physicians Dr. [Anthony] Costrini, Dr. Ginie Chan and Dr. Cecil Peterson," while "giving great weight to two Agency consulting physicians who examined [Conley] on one occasion years earlier." Doc. 10 at 22. He further contends the ALJ failed "to even mention his reasons for ignoring their opinions," and instead "based his opinion solely on his biased personal belief than Mr. Conley was not disabled." *Id.* at 25.

An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Lewis*, 125 F.3d at 1440; *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012). Good cause exists when:

> (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques,

7

and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Substantial evidence exists in the record to support the ALJ

affording little weight to plaintiff's treating physicians' opinions. To begin, Costrini treated Conley "for seven years," doc. 10 at 6, all of which came before his alleged disability onset. *See id.* at 1. Moreover, plaintiff himself directly refuted Costrini's 2005 disability conclusion, doc. 6-7 at 6, by testifying that he worked until laid off in March 2007. *See* doc 6-2 at 50.

Peterson's opinion that plaintiff's functional limitations preclude him from engaging in work at any exertional level, doc. 6-11 at 95-97, likewise warranted little deference from the ALJ. Peterson filled out a PCE form in July 2012, but only partially completed it (he left the "remarks" section blank), and provided little to no narrative or insight into the reasons behind his conclusions. It thus has little probative value. *See Spencer ex rel Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting opinion of physician who merely checked boxes on a form without providing any explanation of his conclusions). Although plaintiff has narcolepsy, sleep apnea, and obesity, the existence of these conditions is not sufficient to support Peterson's PCE report or to conclude plaintiff is disabled, since a disability finding hinges not on the

name of or existence of a condition, but on the functional limitations resulting from the disability that prevent an applicant from engaging in any available work. *See* 20 C.F.R. § 404.1520(d)-(f); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit . . . ability to work or undermine the ALJ's determination in that regard."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986))).

To that end, the ALJ's written opinion noted that "Peterson's own findings on examination are inconsistent with his opined limitations," doc. 6-2 at 32 (comparing doc. 6-11 at 73-93, with doc. 6-11 at 95-97), and also "inconsistent with the objective evidence that [Conley's] sleep apnea and narcolepsy have either improved or are as well controlled now as when claimant performed substantial gainful activity."[3] *Id.* The ALJ

---

[3] That evidence includes three sleep studies -- all of which the ALJ discussed, doc. 6-2

also noted that Dr. Peterson's PCE did not acknowledge the consistent statements in VA medical records that plaintiff's CPAP machine controlled his sleep apnea and that his medication regimen was generally effective in treating his narcolepsy. Doc. 6-2 at 32 (citing doc. 6-11 at 50 (September 8, 2011 VA report stating that "[w]ith the CPAP machine, [Conley's apnea index] was down to 2.3, and the patient says it has helped him a whole lot. The patient was advised to continue with that. Otherwise, the patient has no complaints. He has no problems with driving."). Affording little weight to Peterson's opinion, then, is well supported by substantial evidence.

The same can be said for the weight assigned to Chan's opinion. In September 2009, she sent a letter on plaintiff's behalf simply stating he had been diagnosed with various conditions and was, therefore, disabled. Doc. 6-7 at 32. The letter provides no specifics or details beyond plaintiff's diagnoses, that he takes medicine, and "is

---

at 31-32 -- conducted in 1993, 1998, and 2006. The 1993 study indicated that in four trials, plaintiff's sleep apnea index was 13 without the use of a CPAP and 1.1 with the use of a CPAP (a normal index is 5 or less). *See* doc. 6-7 at 25-27. By 1998, plaintiff's sleep latency was between 2.0 and 6.0 minutes, with REM sleep achieved in only one of the naps. *Id.* at 9-12. Finally, in 2006 (a time in which Conley's CPAP "compliance [was] poor," doc. 6-11 at 51), before the alleged onset of his disability, Conley's apnea index remained stable -- and in the normal range -- at 2.3 with use of the machine. *Id.*

unemployable/disabled due to this condition." *Id.* Even though submitted by a treating physician, the ALJ was not required to give carte blanche deference to such a conclusory statement and thus did not err in affording it little weight. *See Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (rejecting treating physician's conclusory opinion that claimant could not perform any gainful employment because no substantial evidence supported it).

Two years after her conclusory letter, Chan submitted a PCE to the Appeals Council, doc. 6-11 at 160-62, as part of plaintiff's request for review.[4] Doc. 6-2 at 1-2. Like Peterson's, Chan's PCE is simply a check-box form and provides no discussion of the medical evidence underlying her conclusions. At most, it is a reiteration of her 2009 statement, which lacked supporting details. Also like Peterson's, Chan's PCE is not entitled to great weight. *See Spencer*, 765 F.2d at 1094; *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (Commissioner may reject unsubstantiated statements from a treating physician).

---

[4] Where, as here, a claimant submits additional evidence to the Appeals Council and argues it erred in denying review, the district court should determine whether the Commissioner's decision is supported by substantial evidence on the record as whole, including the evidence submitted to the Appeals Council. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

12

By contrast, Conley complains that the ALJ gave too much weight to the opinions of Dr. Russell Wallace and Dr. Charles Jones. Doc. 10 at 14. He says the "ALJ did not bother to explain . . . [why they] were entitled to great weight but treating physicians Dr. Chan and Dr. Peterson[] were given no weight." *Id.* That's simply untrue. The ALJ explicitly stated that he afforded great weight to Wallace's and Jones' opinions because "they are consistent with claimant's ability to perform most of the tasks of his past relevant work while demonstrat[ing] objective findings the same or worse as he now demonstrates." Doc. 6-2 at 32. They also took into account "specific program requirements of the applicable regulations governing the Social Security Administration's disability programs and discount[ed] the limitations for [plaintiff's] putative impairments . . . that may have been diagnosed by a physician in the record but for which there are no objective findings." *Id.* And, more importantly, those reasons for weighting the Wallace and Russell opinions heavily find ample support in the record. *See, e.g.*, doc. 6-7 at 9-12 (sleep study conducted years before plaintiff's alleged disability onset, during a time plaintiff continued to perform past relevant work, which showed worse sleep apnea than at

13

present).

At bottom, Conley's contention that the ALJ mis-weighed physician opinions is a request to have the Court reweigh evidence, which the Court cannot do. Instead, it can only determine if substantial evidence supports the ALJ's ruling (which is based on *his* weighing of the evidence). *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841 (11th Cir. 2014) (district courts may not reweigh evidence and must defer to an ALJ's decision if it is supported by substantial evidence). Since it does here, Conley's physician opinion arguments are unavailing.

Conley also argues that, in addition to undervaluing the opinions of Costrini, Chan, and Peterson, the ALJ disregarded "four hundred forty eight pages of VA medical records," and thus failed to consider the entire record. Doc. 10 at 14. Not so. The ALJ expressly stated he considered all the evidence presented to him in rendering his decision. Doc. 6-2 at 29 ("After careful consideration of the entire record . . . ."). More importantly, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision, so long as the ALJ's decision" enables the Court "to conclude that [the ALJ] considered [the claimant's]

medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). That is the case here, notwithstanding Conley's contrary contentions.

## B.  Provision of a Full and Fair Hearing

In his final claimed error, Conley argues that the ALJ denied him a fair hearing because he "arbitrarily and capriciously" credited the testifying vocational expert's (VE) response to one hypothetical instead of his answer to another. Doc. 10 at 16. The ALJ asked two hypothetical questions. In the first, he asked the VE:

> to assume an individual the same age, education and work history as the Claimant who can lift and carry up to 50 pounds occasionally, 25 pounds frequently; can push and pull up to 25 pounds occasionally; stand and walk up to six hours out of an eight-hour workday; sit up to six hours out of an eight-hour workday with normal breaks.
>
> Can occasionally stair and ramp climb, but not ropes, ladders or scaffolds . . . [but with] no limitations regarding manipulation, visual or communication. There are no limitations regarding concentration, persistence and pace and there are no social deficits.
>
> Now based on that hypothetical, could this person perform past relevant work?

Doc. 6-2 at 69-70. The VE opined that such a person could not perform cabinetry as Conley had performed it, but could be an office helper, linen

room attendant, or cashier. *Id* at 70-71. For the second hypothetical, the ALJ added a condition -- the person would be "off task 25 percent or more of any workday." *Id.* at 71. Under those conditions, the VE believed "there would not be any other work at the competitive level at the national/local economy." *Id.* Considering that testimony, Conley's age, education, and work experience, and his RFC (which was informed by the ALJ's credibility findings for Conley and his treating physicians), the ALJ concluded that the first hypothetical better illuminated whether Conley's RFC allowed him to work. Doc. 6-2 at 34; *see Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015).

Although not explicitly discussed in the step 5 section of his written decision, the ALJ credited the VE's response to the first hypothetical in large part because of (1) the little weight the ALJ gave to Conley's treating physicians' opinions; and (2) his finding that Conley lacked credibility. Conley attacks both bases for the ALJ's selection of the first hypothetical. Neither attack prevails.

As discussed above, the ALJ's credibility determinations for Conley's treating physicians are supported by substantial evidence and

16

therefore cannot be reconsidered by the Court. *See Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997) (ALJs must afford great weight to treating physician opinions unless good cause exists to do otherwise). So too for the ALJ's decision that Conley himself lacked credibility. If an ALJ decides to discredit a claimant's testimony, he must "articulate explicit and adequate reasons" for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The ALJ's finding as to credibility, however, need not be explicit. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983). Nevertheless, the implication "must be obvious to the reviewing court." *Id*.

Here, the ALJ more than adequately articulated reasons to find Conley "less than fully credible." Doc. 6-2 at 31. "First, [his] activities of daily living are inconsistent with his alleged limitations." *Id*. Conley, for example, claims that if he sat more than 10 to 15 minutes he would fall asleep. *Id*. at 57-58. Yet, he admits no state or healthcare provider has restricted his ability to drive, *id*. at 47, and as recently as October 2009 -- 2.5 years *after* he allegedly became disabled -- he continued to drive. Doc. 6-7 at 49; *see also* doc. 6-11 at 50

(September 2011 doctor's dictation note stating that Conley "has no problems with driving").

Second, Conley by his own admission continues to smoke and refuses to participate in weight loss programs despite being "told by his physicians [to do so] in order to improve his symptoms from sleep apnea." Doc. 6-2 at 31 (citing doc. 6-11 at 85 (May 17, 2012 doctor visit progress notes stating that, after reviewing the health risks of obesity "[p]atient [r]efuses referral to MOVE or another weight loss program")); *compare* doc. 6-7 at 81 (May 2010 visit notes indicating Conley received tobacco cessation counseling and agreed to use a nicotine patch in efforts to quit), *with* doc. 6-11 at 88 (doctor advised Conley in May 2012 once again to quit smoking). Given that, the ALJ reasonably inferred that Conley's limitations must not be as debilitating as alleged. Doc. 6-2 at 31.

Third, Conley gave inconsistent statements about his CPAP use, claiming at his hearing to wear it every night, doc. 6-2 at 56, yet going two months without it in 2011 because he failed to have the VA replace his broken machine. Doc. 6-11 at 52. Finally, he has not pursued

CPAP-related, doctor-recommended, improvements to his treatment regimen which, like his refusal to lose weight or quit smoking, suggests his apnea is better controlled than alleged. Doc. 6-7 at 49-51. Even if evidence supporting Conley's claimed limitations preponderates, these portions of the record provide "such relevant evidence as a reasonable person would accept as adequate to support [the] conclusion" that Conley lacked credibility *Winschel*, 631 F.3d at 1178. The ALJ's credibility finding, therefore, must stand.

In the face of that credibility finding and the little weight given to Conley's treating physicians' opinions, both of which are supported by substantial evidence, the ALJ did not err in relying on the VE's response to the first hypothetical and thus also did not fail to give Conley a full and fair hearing by failing to develop the administrative record.

## IV. CONCLUSION

Substantial evidence supports the ALJ's conclusion that Conley "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and thus is "not disabled."

Doc. 6-2 at 34. Accordingly, this case should be **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED** this 9th day of July, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**